**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

J. PAUL REDDAM; J. PAUL REDDAM
TRUST; CLARENCE VENTURES, LLC,
a Delaware Limited Liability
Company; ZED CORPORATION, a
California Corporation,
                    *Plaintiffs-Appellees,*

                    v.

KPMG LLP; PRESIDIO ADVISORS,
LLC; PRESIDIO ADVISORY SERVICES
INC.; PRESIDIO FUND ADVISORS,
LLC, d/b/a HOLLAND PARK CAPITAL
ADVISORS, LLC; DEUTSCHE BANK
AG; OLSON LEMONS PC,
                    *Defendants,*

                    and

SIDLEY AUSTIN BROWN AND WOOD,
LLP,
                    *Defendant-Appellant.*

No. 05-56664

D.C. No.
CV-04-01227-VAP

9243

J. PAUL REDDAM; J. PAUL REDDAM
TRUST; CLARENCE VENTURES, LLC,
a Delaware Limited Liability
Company; ZED CORPORATION, a
California Corporation,
                    *Plaintiffs-Appellees,*

                    v.

KPMG LLP,
                    *Defendant-Appellant,*

                    and

PRESIDIO ADVISORS, LLC; PRESIDIO
ADVISORY SERVICES INC.; PRESIDIO
FUND ADVISORS, LLC, d/b/a
HOLLAND PARK CAPITAL ADVISORS,
LLC; SIDLEY AUSTIN BROWN AND
WOOD, LLP; DEUTSCHE BANK AG;
OLSON LEMONS PC,
                    *Defendants.*

No. 05-56671

D.C. No.
CV-04-01227-VAP

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
July 25, 2006—Pasadena, California

Filed August 10, 2006

Before: Ferdinand F. Fernandez, Pamela Ann Rymer, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Fernandez

**COUNSEL**

Daniel L. Geyser, Munger, Tolles & Olson LLP, Los Angeles, California, for defendant-appellant Sidley Austin LLP. Dale E. Barnes, Bingham McCutchen LLP, San Francisco, California, for defendant-appellant KPMG LLP.

Laura Lindgren, Hennigan, Bennett & Dorman LLP, Los Angeles, California; David W. Wiechert, Law Office of David W. Wiechert, San Clemente, California, for the plaintiffs-appellees.

## OPINION

FERNANDEZ, Circuit Judge:

KPMG LLP and Sidley Austin LLP (Sidley) appeal the district court's remand of this case, which had been removed from the Superior Court of the State of California for the County of Orange (Orange County Superior Court) pursuant to 9 U.S.C. § 205 (removal of actions relating to arbitration agreements under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards). They argue that the district court erred when it remanded after it determined that an arbitration agreement had become unenforceable because the arbitrator (the National Association of Securities Dealers, Inc.) had declined jurisdiction over the parties.

We have jurisdiction and we reverse.

## BACKGROUND

J. Paul Reddam, J. Paul Reddam Trust, Clarence Ventures, LLC, and Zed Corporation (collectively Reddam) assert that KPMG, Presidio Advisors LLC, Sidley[1] and Deutsche Bank AG formed a joint venture in which they agreed to develop, implement and market certain complex programs ("the programs"), which were designed to reduce the taxes of those who adopted the programs. The detailed nature of the programs is not relevant to this action. Suffice it to say that, as relevant here, Reddam was to purchase shares of Deutsche

---

[1]Actually, the law firm of Brown & Wood was the initial participant, but Sidley is the successor in interest to Brown & Wood.

Bank stock and that required the use of a securities broker. Reddam was referred to Deutsche Bank Securities Investments (DBSI), a subsidiary of Deutsche Bank, for that purpose.

Reddam became involved because upon selling a company, DiTech Funding Corp., for a substantial sum,[2] Reddam desired to minimize income tax liabilities. Reddam, on the advice of KPMG and Sidley, did adopt the programs. As contemplated by the design of the programs, Reddam did use DBSI as a broker and entered into customer agreements for that purpose. Each of those customer agreements contained an identical arbitration clause which provided that:

> all controversies which may arise between us concerning any transaction of construction, performance, or breach of this or any other agreement between us . . . shall be determined by arbitration. Any arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc., as the undersigned you may elect. If the undersigned fails to make such election, then you may make such election.

Alas, the programs did not have the desired tax avoidance effects, and Reddam incurred substantial tax liabilities as a result.[3] Reddam then filed this action against KPMG, Sidley, Deutsche Bank and others in the Orange County Superior Court. Reddam did not bring an action against DBSI, although DBSI was mentioned in the complaint. Deutsche Bank removed on the ground that the action related to the arbitration agreement with DBSI. *See* 9 U.S.C. § 205.

---

[2]Seventy million dollars in cash and an additional one hundred and seventy million dollars in annual earn-out payments.

[3]Thirty-six million dollars of liability to the United States Treasury and sixteen million dollars of liability to the State of California.

Deutsche Bank, along with KPMG and Sidley, then moved to compel arbitration. Reddam responded with a motion to remand on the basis that the district court lacked removal jurisdiction as to Deutsche Bank and that, at any rate, the claims against KPMG and Sidley should be remanded. The district court determined that it did have removal jurisdiction and that Deutsche Bank, KPMG and Sidley could all enforce the arbitration agreements.[4]

Before the NASD, Reddam deleted all reference to DBSI from its complaint, asserted that DBSI was not a party, and suggested that the NASD did not have jurisdiction. The NASD agreed with Reddam and refused to take jurisdiction over the arbitration because, as it said, no named party was a member or associated person of the NASD.

The parties then returned to the district court where Reddam moved for remand because the NASD was no longer available. KPMG and Sidley argued that the district court should exercise its authority under 9 U.S.C. § 5 to appoint a substitute arbitrator rather than remanding. However, the district court agreed with Reddam and declared that "the claims are no longer subject to arbitration" because the NASD had declined to proceed. Thus, the district court remanded the case to the Orange County Superior Court and refused to stay its order pending appeal.

This appeal by KMPG and Sidley followed.[5]

### STANDARDS OF REVIEW

"We review de novo the district court's determination that it lacked subject matter jurisdiction" over the action. *Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1037 (9th Cir. 2004).

---

[4]The order was issued on December 14, 2004, by Gary L. Taylor, District Judge.

[5]Deutsche Bank has settled and is not part of this appeal.

We also review de novo the district court's determinations about the scope and validity of the contractual DBSI arbitration clauses. *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1462-63 (9th Cir. 1983). Similarly, we review de novo the district court's determination about whether the issues remain arbitrable. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

## JURISDICTION

Reddam argues that we do not have jurisdiction to review the remand to the Orange County Superior Court because "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). We disagree.

**[1]** It is a commonplace that an order that is actually issued pursuant to 28 U.S.C. § 1447(c), which provides for remand when there is a defect in the removal or when there is a lack of subject matter jurisdiction, cannot be reviewed by us. *See, e.g., Kircher v. Putnam Funds Trust*, ___ U.S. ___, ___, 126 S. Ct. 2145, 2153, ___ L. Ed. 2d ___, ___ (2006); *Abada v. Charles Schwab & Co., Inc.*, 300 F.3d 1112, 1116 (9th Cir. 2002); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 276 (9th Cir. 1984). But despite its apparently comprehensive language, § 1447(d) does not mean quite what it says. Where the remand order is not based on defective removal or lack of subject matter jurisdiction at the time of removal,[6] § 1447(c) does not apply and the § 1447(d) restriction does not apply either. As the Supreme Court has put it, "only remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are immune from review

---

[6]There can be little doubt that the question of jurisdiction is determined as of the time of the removal itself. *See Abada*, 300 F.3d at 1117; *Poore v. Am.-Amicable Life Ins. Co.*, 218 F.3d 1287, 1290-91 (11th Cir. 2000); *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998); *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 708 (7th Cir. 1992).

under § 1447(d)." *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 346, 96 S. Ct. 584, 590, 46 L. Ed. 2d 542 (1976). Moreover, we are not bound by the district court's characterization of the basis for its remand order. *See Abada*, 300 F.3d at 1117; *cf. Kunzi v. Pan Am. World Airways, Inc.*, 833 F.2d 1291, 1293-94 (9th Cir. 1987) (district court did not specify basis, but it was apparent that the basis was § 1447(c)).

In the case at hand, the district court expressly declared that it had jurisdiction in the first place. It never deviated from that declaration. This case is unlike cases where a district court later determines that there was no jurisdiction ab initio.[7] In this case, the district court determined that a later event—the NASD's refusal to arbitrate—had made the arbitration provision unenforceable as to the parties then before it.

**[2]** We recognize that the district court referred to § 1447(c) when it decided the removal issue, but that is not dispositive. On the face of its order, the district court explained that it would remand because "[h]ere, based on the decision by the NASD to decline jurisdiction, the claims are *no longer subject to arbitration*. It follows, therefore, that the sole basis for federal jurisdiction is *no longer present*. . . . Thus, the Court has no basis for jurisdiction, and must remand the case to state court." (Emphasis added). That plainly indicates that the later occurring events were the basis for the decision. *That* cannot be a basis for a § 1447(c) remand order. *See Davis v. UAW*, 392 F.3d 834, 837-38 (6th Cir. 2004), *petition for cert. filed*, 74 U.S.L.W. 3051 (U.S. Jul. 15, 2005) (No. 05-107); *Poore*, 218 F.3d at 1290-91; *Sparta Surgical*, 159 F.3d at 1211-13.

---

[7]*See DaWalt v. Purdue Pharma, L.P.*, 397 F.3d 392, 400-02 (6th Cir. 2005); *Special Invs. Inc. v. Aero Air Inc.*, 360 F.3d 989, 996 & n.2 (9th Cir. 2004) (Fernandez, J., concurring); *Adkins v. Ill. Cent. R.R. Co.*, 326 F.3d 828, 833 (7th Cir. 2003).

**[3]** Therefore, we have jurisdiction to review the propriety of the remand order.[8]

## DISCUSSION

At root, the district court remanded because the NASD refused to act as the arbitrator. That, argued Reddam, meant that the issues could not be arbitrable at all. The argument, accepted by the district court, raises two questions. First, did the agreement amount to a choice of forum clause? Second, if it did, did the refusal of that forum to conduct the arbitration mean that no arbitration at all could go forward—that is, was the choice of forum clause integral? The district court answered both questions in the affirmative. We do not.

### A.   *Was There a Choice of Forum Clause?*

As we have already pointed out, the arbitration clause used in the customer agreement does state that "[a]ny arbitration under this agreement shall be determined pursuant to the rules then in effect of the National Association of Securities Dealers, Inc., as the undersigned you may elect." But what does that mean? In deciding, we must, no doubt, apply the usual principles of contract interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998).

We have noted that state law generally applies to the construction of arbitration agreements. *See id.* If so, the agreement in question chooses the law of the State of New York. But we need not resolve the question of whether state law, or federal law,[9] should apply to a construction of the forum

---

[8]Beyond that, we have jurisdiction under 9 U.S.C. § 16(a)(1)(A) & (B) to review the district court's conclusion that it could no longer enforce the arbitration agreement.

[9]Other courts of appeals have applied federal law on the basis that arguments about whom the arbitrator can be present issues of federal law. *See, e.g.*, *Smith Barney, Inc. v. Critical Health Sys. of N.C., Inc.*, 212 F.3d 858, 860 (4th Cir. 2000); *Weiner v. Gutfreund (In re Salomon Inc. S'holders' Derivative Litig.)*, 68 F.3d 554, 559 (2d Cir. 1995).

selection provision before us. Whichever body of law is applied, it is our task to determine and effectuate the intent of the parties[10] and on this record that means we must do so by reference to the terms of the agreement itself. *See In re Salomon*, 68 F.3d at 557-58; *Cowen & Co. v. Anderson*, 558 N.E.2d 27, 28-29 (N.Y. 1990).

The provision in the DBSI customer agreement does select the rules of the NASD, but does *not* state that the arbitration is to take place before the NASD itself. Had the latter been intended, the parties could easily have said so. In fact, a more recent version of DBSI's customer agreement reads: "I agree to arbitrate with you any controversies . . . only before the New York Stock Exchange or the National Association of Securities Dealers Regulation, Inc. at my election." The absence of similar language militates in favor of a decision that the provision in question here does not select a forum at all.

On the other hand, a commonsensical reading of the provision would suggest that the parties at least considered the NASD to be a proper forum for their arbitration, and probably expected that the NASD would be the forum. It is unlikely that they wanted to use NASD rules, but did not intend to select the NASD itself as the arbitrator, if it would agree to arbitrate. A number of other courts of appeals have decided that a clause which adopts the rules of an organization like the NASD implicitly chooses that organization as the, or a, forum. *See Smith Barney*, 212 F.3d at 860-61; *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *In re Salomon*, 68 F.3d at 557-58; *Luckie v. Smith Barney, Harris Upham & Co., Inc.*, 999 F.2d 509, 510-11, 513-14 (11th Cir. 1993) (per curiam); *PaineWebber, Inc. v. Rutherford*, 903 F.2d 106, 108 (2d Cir. 1990); *Roney & Co. v. Goren*, 875 F.2d 1218, 1219-20, 1223 (6th Cir. 1989).

---

[10]*See Wolsey*, 144 F.3d at 1210.

Ultimately, we need not decide whether the provision at issue was a choice of forum clause because, as explained below, the provision was not integral to the arbitration agreement in any event.

B.   *Was the Choice of the NASD Integral?*

**[4]** When a court asks whether a choice of forum is integral, it asks whether the whole arbitration agreement becomes unenforceable if the chosen arbitrator cannot or will not act. As one court of appeals put it:

> Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" will the failure of the chosen forum preclude arbitration. Here there is no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate. Brown's argument that the arbitration agreement is void because the NAF was unavailable must fail.

*Brown*, 211 F.3d at 1222 (citations omitted). We see no evidence that the choice was integral here—in fact, there was not even an express statement that the NASD would be the arbitrator.

The district court, however, relied upon *In re Salomon*, 68 F.3d at 555-56. That case did, indeed, declare that the implicit choice was also implicitly integral and exclusive. It presented little reasoning to support that determination but, rather, pointed to other cases which had held that arbitration must go forward in one of the chosen fora. *Id.* at 558-59. It then concluded that where a forum selection clause "is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail." *Id.* at 561 (internal quotation marks omitted). However, its holding is not persuasive. Essentially, the cases upon which it relied were inappo-

site. In *Roney*, 875 F.2d at 1223, the Sixth Circuit Court of Appeals decided that when the parties had agreed to a particular arbitrator, which was still available, one of them could not choose a different arbitrator. In *PaineWebber*, 903 F.2d at 107-08, the Second Circuit Court of Appeals reached the same conclusion in the same context. Finally, in *Luckie*, 999 F.2d at 510-11, 513-14, the Eleventh Circuit Court of Appeals was presented with the same situation and reached the same result. Again, none of those cases dealt with a failure or refusal of the named arbitrator to arbitrate. Thus, they cast little light on that situation.

Other cases relied upon by Reddam are no more to the purpose. In *Smith Barney*, 212 F.3d at 862, the Fourth Circuit Court of Appeals prevented a party from seeking another arbitrator when the fora mentioned in the agreement were available. Even further afield is a case where the agreement expressly provided that arbitration could be "only before" certain fora and at least one of them was still available. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109, 111-13 (2d Cir. 1990).

**[5]** Thus, we cannot agree that the customer agreement involved here became unenforceable between the parties when the NASD bowed out. There is no evidence that naming of the NASD was so central to the arbitration agreement that the unavailability of that arbitrator brought the agreement to an end. *See Brown*, 211 F.3d at 1222; *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991); *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910-11 (S.D.N.Y. 1978). Something more direct is required before we, in effect, annihilate an arbitration agreement.

**[6]** Our decision is analogous to our approach to forum selection clauses which choose a particular court as the litigation arena. There we have not treated the selection of a specific forum as exclusive of all other fora, unless the parties

have expressly stated that it was. *Compare Pelleport Investors*, 741 F.2d at 275, 280 (holding remand required where contract provided that "disputes . . . shall be litigated only in the Superior Court for Los Angeles, California (and in no other)"), *with N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1036-37 (9th Cir. 1995) (holding remand not proper where contract provided that decisions "shall be enforceable by a petition . . . filed in the Superior Court of the City and County of San Francisco" because that language "is permissive."), *and Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 76-78 (9th Cir. 1987) (holding remand not proper where contract provided that "[t]he courts of California, County of Orange, shall have jurisdiction over the parties"). In referring to those cases, we do not suggest that other arbitral fora can be utilized when the one selected by the parties is itself available. But here, of course, the selected forum was not available.

[7] Therefore, on this record we are constrained to hold that the refusal of the NASD to conduct an arbitration neither rendered the district court powerless to require arbitration to proceed[11] nor deprived it of jurisdiction. In determining otherwise, the district court erred.[12]

## CONCLUSION

When this case was removed, the district court determined that it had jurisdiction and issued an order compelling arbitration. Thereafter, when the named arbitrator refused to accept the case, the district court determined that the arbitration

---

[11]*See Brown*, 211 F.3d at 1222.

[12]Reddam asks that we affirm the district court's remand order on the basis that his claims against KPMG and Sidley were not subject to arbitration in the first place and should not have been removed and ordered to arbitration. But removal was at the behest of Deutsche Bank, and 9 U.S.C. § 205 applies to actions, not individual claims within actions. Moreover, an interlocutory order compelling arbitration cannot, itself, be appealed. *See* 9 U.S.C. § 16(b)(3).

agreement had become unenforceable and that federal question jurisdiction had dissipated like a brume in a breeze.

We reverse because the evidence does not support a determination that the parties agreed to resile from arbitration if the implicitly named arbitrator—the NASD—did not consent to act.

REVERSED. The district court shall enter an order recalling the remand and shall notify the Orange County Superior Court that the district court has resumed jurisdiction over the action.