# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ATLANTIC NATIONAL TRUST LLC, a
Florida limited liability company,
            *Plaintiff-Appellee,*

v.

MT. HAWLEY INSURANCE COMPANY,
a Delaware corporation,
            *Defendant-Appellant,*

LEBANON HARDBOARD LLC, an
Oregon limited liability company;
TRITALENT FUNDING GROUP, LLC,
an Oregon limited liability
company,
            *Defendants-Appellees,*

and

CRUMP INSURANCE SERVICES, INC., a
Texas corporation; CHAMBERLAIN
INSURANCE AGENCY LLC, an
Oregon limited liability company,
            *Defendants.*

No. 09-35716

D.C. No.
6:09-cv-06054-TC

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, Chief District Judge, Presiding

Argued and Submitted
May 7, 2010—Portland, Oregon

Filed September 2, 2010

Before: Andrew J. Kleinfeld, Carlos T. Bea and
Sandra S. Ikuta, Circuit Judges.

13325

Opinion by Judge Ikuta

**COUNSEL**

Brian E. Sims, Morison Holden Derekwetzky & Prough, LLP, Walnut Creek, California, for appellant Mt. Hawley Insurance Co.

John Folawn, Folawn Alterman Richardson LLP, Portland, Oregon, for appellee Atlantic National Trust, LLC.

Paul G. Dodds, Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay, LLP, Portland, Oregon, for appellee Tritalent Funding Group, LLC.

Dean D. DeChaine, Miller Nash LLP, Portland, Oregon, for appellee Lebanon Hardboard, LLC.

**OPINION**

IKUTA, Circuit Judge:

Today we hold that we lack appellate jurisdiction to review a federal district court order remanding a case to state court

based on a ground colorably characterized as a "defect" for purposes of 28 U.S.C. § 1447(c). *See* 28 U.S.C. § 1447(d); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224 (2007).

# I

In October 2008, a fire caused over $10 million in damage to buildings and property owned by Lebanon Hardboard, LLC. Atlantic National Trust, LLC ("Atlantic") had loaned money to Lebanon Hardboard secured by interests in the buildings and property. The loan agreements required Lebanon Hardboard to maintain fire insurance on the property for the benefit of Atlantic, and to assign all insurance proceeds to Atlantic. Tritalent Funding Group, LLC ("Tritalent") had also loaned money to Lebanon Hardboard and had likewise obtained a security interest in the buildings and property.

Before the fire, Lebanon Hardboard submitted an application for fire insurance to Crump Insurance Services, Inc. ("Crump") and Chamberlain Insurance Agency LLC ("Chamberlain"), both of which were agents of Mt. Hawley Insurance Company ("Mt. Hawley"). Mt. Hawley issued an insurance binder (the actual policy was not delivered until after the fire) to Lebanon Hardboard with a $4 million per occurrence limit, but the binder did not designate Atlantic or Tritalent as mortgagees or loss payees.

After the fire, Atlantic demanded payment under the policy from Lebanon Hardboard and Mt. Hawley. Mt. Hawley denied that Atlantic was covered by the insurance policy or that it had any obligation to pay Atlantic. On February 20, 2009, Atlantic filed a complaint for damages and declaratory relief against Mt. Hawley, Crump, Chamberlain, Lebanon Hardboard, and Tritalent in Oregon state court. Atlantic sought, among other things, reformation of the contract and a declaration that Atlantic's rights to the insurance proceeds were superior to Tritalent's and Lebanon Hardboard's. Atlan-

tic gave Lebanon Hardboard and Mt. Hawley courtesy copies of the complaint on February 25, 2009.

The next day, Mt. Hawley removed the case to federal court without the consent of the other defendants. At that time, neither Mt. Hawley nor any of the other defendants had been served. Lebanon Hardboard and Tritalent waived service on March 3.

On March 19, 21 days after Mt. Hawley removed the case, Lebanon Hardboard and Tritalent filed a motion in district court to remand the case to state court. The next day, Atlantic joined the motion to remand.

A magistrate recommended that the district court remand the action because Lebanon Hardboard and Tritalent had not consented to removal and they timely exercised their right under 28 U.S.C. § 1448 to choose a state forum.[1] The magistrate reasoned that removal of a complaint to federal court is subject to the "unanimity rule" set forth in *Chicago Rock Island & Pacific Railway Co. v. Martin*, 178 U.S. 245, 248 (1900), which holds that all defendants must consent to or join in a removal, and here Mt. Hawley had violated that rule by failing to obtain the consent of its co-defendants. The district court adopted the magistrate's findings and recommendation and remanded the case to state court.[2] This timely appeal followed.

---

[1] 28 U.S.C. § 1448 provides that after a case has been removed to federal court, the plaintiff may complete or perfect service on a defendant who had not been properly served before removal, but states that "[t]his section shall not deprive any defendant upon whom process is served after removal of his right to move to remand the case."

[2] Because the district court adopted the magistrate's findings and recommendation in full, we use the term "district court" to refer to both the district court's and the magistrate's conclusions.

## II

The issue in this case is whether we have appellate jurisdiction to consider the appeal of the district court's remand order. As always, "we have jurisdiction to determine whether we have jurisdiction to hear the case." *Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1239 (9th Cir. 2006). Because the scope of our authority to review an allegedly erroneous remand order is not entirely clear, we begin with a review of the legal framework.

## A

**[1]** "The beginning point of statutory interpretation must be the language of the statute." *Am. Bird Conservancy v. F.C.C.*, 545 F.3d 1190, 1193 (9th Cir. 2008) (internal quotation marks omitted). Under 28 U.S.C. § 1447(d), "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ."[3] The Supreme Court has interpreted this section more narrowly than its plain language would indicate. *See Thermtron Prods. Inc. v. Hermansdorfer*, 423 U.S. 336, 343 (1976), *superseded by statute on other grounds*, 28 U.S.C. § 1447(c). As explained in *Thermtron*, § 1447(d) prohibits review only of remand orders issued pursuant to a ground enumerated in § 1447(c). *Id.* At the time *Thermtron* was decided, § 1447(c) stated, in part: "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs." *Thermtron*, 423 U.S. at 342. *Thermtron* indicated that the case at issue had not been removed "improvidently" because there was "no express stat-

---

[3]Section 1447(d) provides an exception to this prohibition on appellate review, for "an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title . . . ." The cited section, 28 U.S.C. § 1443, refers to certain civil rights cases, and therefore does not apply in this case.

utory provision forbidding the removal" of the action and the case had been "timely removed in strict compliance with 28 U.S.C. § 1446." *Id.* at 344 & n.8. Moreover, the case had not been removed "without jurisdiction" because the case could have been filed initially in the district court pursuant to 28 U.S.C. § 1331. *Id.* at 344.

**[2]** According to *Thermtron*, "[i]f a trial judge purports to remand a case on the ground that it was removed 'improvidently and without jurisdiction,' his order is not subject to challenge in the court of appeals." *Id.* at 343. As the Supreme Court later explained, "[w]here the order is based on one of the enumerated grounds, review is unavailable no matter how plain the legal error in ordering the remand." *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977); *see also Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723 (1977) (per curiam). Nevertheless, an appellate court can review a remand order when a trial judge "exceeded his statutorily defined power" by remanding "a properly removed case on grounds that he had no authority to consider." *Thermtron*, 423 U.S. at 351. In the matter before it, *Thermtron* noted that the district court had remanded the case based on its concern about its "heavy docket," which the district court "thought would unjustly delay plaintiffs in going to trial on the merits of their action." *Id.* at 344. Because docket congestion was not a ground enumerated in § 1447(c), *Thermtron* held that there was appellate jurisdiction to review and reverse the district court's decision. *Id.* at 345.

## B

**[3]** After *Thermtron*, Congress amended § 1447(c) several times. *See Powerex*, 551 U.S. at 229-30. At present, § 1447(c) states, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the

> notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

In *Powerex*, the Court stated that it would "assume for purposes of this case" that the post-*Thermtron* amendments to § 1447(c) were "immaterial to *Thermtron*'s gloss on § 1447(d)," so that § 1447(d)'s bar on appellate review is limited to remands based on subject matter jurisdiction and nonjurisdictional defects. *Powerex*, 551 U.S. at 230 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S.706, 711-12 (1996)). This assumption is consistent with the Court's practice of applying *Thermtron*'s rule despite the changes in statutory language. *See, e.g.*, *Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1865-66 (2009); *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 640-41 (2006); *Quackenbush*, 517 U.S. at 711-12; *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127-28 (1995); *Briscoe*, 432 U.S. at 413 n.8; *Gravitt*, 430 U.S. at 724. Our cases have followed the Court's lead in assuming that amendments to § 1447(c) are immaterial to *Thermtron*'s gloss on § 1447(d). *See, e.g.*, *Kamm v. ITEX Corp.*, 568 F.3d 752, 754 (9th Cir. 2009) (applying *Thermtron* to the present form of § 1447(c) without addressing the changed statutory language); *Executive Software N. Am., Inc. v. U.S. Dist. Ct.*, 24 F.3d 1545, 1549 (9th Cir. 1994) (same for 1988 amendments to § 1447(c)).

In applying *Thermtron*'s rule that § 1447(d) does not preclude all appellate review of remand orders, we have held that review is appropriate in a number of situations not discussed in *Thermtron*. For instance, in order to determine whether we lack jurisdiction under § 1447(d) in cases where the basis of a district court's remand order is unclear, we may "look to the substance of the order to determine whether it was issued pursuant to section 1447(c)." *Schmitt v. Ins. Co. of N. Am.*, 845 F.2d 1546, 1549 (9th Cir. 1988), *superseded by statute on other grounds*, 28 U.S.C. § 1447(c). In this vein, we have ana-

lyzed the basis of a district court's remand order where the district court did not identify the ground for its remand, *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 963-64 (9th Cir. 2004), where the order was ambiguous, *Schmitt*, 845 F.2d at 1549, or where it was not clear that the ground specified by the district court was a ground enumerated in § 1447(c), *see Kamm*, 568 F.3d at 755, 757 (examining whether a district court's remand of a breach of contract action based on the contract's forum selection clause fell within § 1447(c)). In those cases, however, we acknowledged that if the district court had based its remand on a ground enumerated in § 1447(c), we would lack jurisdiction to review whether the district court's application of that ground was correct. *See, e.g.*, *United Investors*, 360 F.3d at 964.

We have also held that we may review remand orders where the district court exceeded the procedural limitations in § 1447(c), even where a district court purported to remand on a ground enumerated in that statute. For example, we have reasoned that the plain language of § 1447(c) precludes a district court from issuing a remand order sua sponte for a non-jurisdictional defect, *see Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1193 (9th Cir. 2003), or from remanding for such a defect outside of the prescribed 30-day time period, *see N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir. 1995).

However, certain statements in our cases have strayed beyond the limited review permitted under *Thermtron*. Most notably, we have held that "we are not bound by the district court's characterization of the basis for its remand order." *Reddam v. KPMG LLP*, 457 F.3d 1054, 1058 (9th Cir. 2006) (citing *Abada v. Charles Schwab & Co., Inc.*, 300 F.3d 1112, 1117 (9th Cir. 2002)). Thus, even when the district court purported to remand an action on jurisdictional grounds, we have held that we can look behind the district court's ruling to determine whether the court correctly characterized the basis

for its remand. In *Reddam*, for example, two defendants had removed a state action on the ground that the underlying dispute was subject to an arbitration agreement between the parties. *Id.* at 1057. When the arbitrator subsequently determined that it lacked authority to arbitrate, the plaintiffs moved to remand. *Id.* The district court granted the motion on the ground that it lacked subject matter jurisdiction under § 1447(c) because of the arbitrator's determination. *Id.* Rather than holding that *Thermtron*'s construction of § 1447 prohibited our review, we instead held that we were not bound by the district court's characterization. *Id.* at 1058. We justified our review of the district court's remand order because its reasoning "plainly indicate[d] that the later occurring events [the arbitrator's post-removal refusal to arbitrate] were the basis for the decision," and such post-removal events "cannot be a basis for a § 1447(c) remand order." *Id.* at 1059. Because we concluded that the district court erred in holding it lacked subject matter jurisdiction, we reversed the district court's remand order. *Id.* at 1061; *accord Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933, 938 (9th Cir. 2006).

## C

[4] In 2007, the Supreme Court issued its opinion in *Powerex*, narrowing the scope of appellate jurisdiction to review allegedly erroneous remand orders where the district court purported to remand under § 1447(c). In *Powerex*, two foreign defendants (including Powerex Corp.) and two federal defendants removed a state court action, alleging that the district court had subject matter jurisdiction under 28 U.S.C. § 1441(d) (authorizing removal by a "foreign state" as defined in the Foreign Sovereign Immunities Act) and 28 U.S.C. § 1442(a) (authorizing removal by federal agencies). *Powerex*, 551 U.S. at 227. After dismissing the two federal defendants and one of the foreign defendants on immunity grounds, the district court determined that Powerex Corp. was not a "foreign state." *Id.* Accordingly, the district court remanded for lack of subject matter jurisdiction. *Id.* at 228,

232-33. Powerex Corp. sought review of the district court's allegedly erroneous holding that it was not a foreign sovereign. *Id.* at 228. The Supreme Court held, however, that as a threshold matter there was no appellate jurisdiction to consider this issue. *See id.* at 234, 239.

**[5]** First, *Powerex* rejected the argument that post-removal events can never constitute a defect in subject matter jurisdiction for purposes of § 1447(c). *Id.* at 230. The Court explained that "[n]othing in the text of § 1447(c) supports the proposition that a remand for lack of subject-matter jurisdiction is not covered so long as the case was properly removed in the first instance." *Id.* Rejecting the proposed "narrowing construction of § 1447(c)'s unqualified authorization of remands for lack of 'subject matter jurisdiction,' " *Powerex* held that "when a district court remands a properly removed case because it nonetheless lacks subject-matter jurisdiction, the remand is covered by § 1447(c) and thus shielded from review by § 1447(d)." *Id.* at 230-31.

**[6]** Second, *Powerex* enunciated the general principle "that review of the District Court's characterization of its remand as resting upon lack of subject-matter jurisdiction, to the extent it is permissible at all, should be limited to confirming that that characterization was colorable." *Id.* at 234. The reasons for so narrowly limiting any "look behind the district court's characterization," the Court explained, was to avoid "[l]engthy appellate disputes about whether an arguable jurisdictional ground invoked by the district court was properly such . . . ." *Id.* at 233-34. Such lengthy disputes would frustrate the purpose of § 1447(d), which "reflects Congress's longstanding policy of not permitting interruption of the litigation of the merits of a removed case by prolonged litigation of questions of jurisdiction of the district court to which the cause is removed." *Id.* at 238 (internal quotation marks omitted). In addition, *Powerex* noted that "the line between misclassifying a ground as subject-matter jurisdiction and

misapplying a proper ground of subject-matter jurisdiction is sometimes elusively thin." *Id.* at 234.

**[7]** Applying this reasoning to the facts before it, the Court stated that "[a]s an initial matter, it is quite clear that the District Court was purporting to remand" on the ground of subject matter jurisdiction, and indeed, that was the only "plausible explanation of what legal ground the District Court actually relied upon for its remand . . . ." *Id.* at 233 (emphases omitted). Although the Court had not passed on the legal question before the district court, "whether, when sovereign immunity bars the claims against the only parties capable of removing the case, subject-matter jurisdiction exists to entertain the remaining claims," the Court noted that "the point is certainly debatable." *Id.* at 233-34. *Powerex* concluded that "when, as here, the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)." *Id.* at 234. As such, there was no need to "pass on whether § 1447(d) permits appellate review of a district-court remand order that dresses in jurisdictional clothing a patently nonjurisdictional ground (such as the docket congestion invoked by the District Court in *Thermtron*)." *Id.* (citation omitted).

**[8]** Although *Powerex* involved a remand based on subject matter jurisdiction under § 1447(c), the Court's reasons for holding that "review of the District Court's characterization of its remand . . . should be limited to confirming that that characterization was colorable," *id.*, are equally applicable to remands relying on a non-jurisdictional defect. Neither the plain language of § 1447(d) nor *Thermtron*'s gloss on that section distinguishes between orders based on jurisdictional and non-jurisdictional grounds. *See Thermtron*, 423 U.S. at 343; *see also Briscoe*, 432 U.S. at 413 n.13. Moreover, appellate review of a district court's characterization of a remand based on a non-jurisdictional defect would frustrate Congress's intent to avoid "interruption of the litigation of the merits of a removed case by prolonged litigation" of proce-

dural questions. *Powerex*, 551 U.S. at 238; *see also Osborn v. Haley*, 549 U.S. 225, 243 (2007) (holding that § 1447(d) is an "antishuttling" provision aimed at preventing "prolonged litigation of questions of jurisdiction of the district court to which the cause is removed" (internal quotation marks omitted)). And as with jurisdictional defects considered in *Powerex*, it is equally difficult to distinguish the line between "misclassifying a ground" as a defect, and correctly classifying an issue as a defect but then misapplying the law to the facts of the case. *See Powerex*, 551 U.S. at 234. Accordingly, in light of *Powerex*, when a district court remands a case purporting to rely on a ground enumerated in § 1447(c), we have appellate jurisdiction to look behind the district court's characterization of its basis for remand only to determine whether the ground was "colorable."

## III

**[9]** In light of these precedents, we must determine whether we have jurisdiction to review the district court's allegedly erroneous remand order. We first consider whether the district court remanded purporting to rely on a ground enumerated in § 1447(c). *Thermtron*, 423 U.S. at 343. We conduct this part of our review de novo. *Kamm*, 568 F.3d at 754. In this case, the district court identified the defendant unanimity rule as the basis for its remand. Because we have held that a violation of the unanimity rule is a defect under § 1447(c), *Aguon-Schulte*, 469 F.3d at 1240, we conclude that the district court purported to rely on a legal ground enumerated in § 1447(c) even though the district court did not cite that statute.

**[10]** We must next consider whether the district court's characterization of the defect in this case was "colorable." *Powerex*, 551 U.S. at 234. The district court reasoned that under § 1448, a later-served defendant who opts to exercise its right to choose the state court forum within the 30-day period provided in § 1447(c) may force a remand to state

court. Because Lebanon Hardboard and Tritalent made a timely motion to remand, the district court concluded that a remand to state court was appropriate. The district court's reasoning establishes that it based the remand order on defendant non-unanimity; indeed, that is the only "plausible explanation of what legal ground the District Court actually relied upon for its remand in the present case." *Powerex*, 551 U.S. at 233. As in *Powerex,* although we have not passed on the question whether the defendant non-unanimity rule applies in the precise circumstances of this case, "the point is certainly debatable." *Id.* at 233-34. Nor is there any concern here that the district court has "dressed up" a ground patently not within § 1447(c). *See Powerex*, 551 U.S. at 234. Indeed, Mt. Hawley does not argue that the district court's remand order was based on a ground patently not enumerated in § 1447(c), such as docket congestion or abstention. Given that the district court purported to remand the case on the basis of a defect under § 1447(c), and that characterization of the remand is colorable, we lack appellate jurisdiction to review this remand order. *See Powerex*, 551 U.S. at 234.

Mt. Hawley argues that this conclusion is wrong because there was no defendant unanimity defect that justified a remand under § 1447(c), and that we are not bound by the district court's characterization of the basis of remand. In arguing that there was no defendant unanimity defect here, Mt. Hawley primarily relies on *Spencer v. United States District Court*, 393 F.3d 867 (9th Cir. 2004). In *Spencer*, following removal to district court, the plaintiffs sought to amend their complaint to name an additional defendant who was a citizen of the forum where the complaint had been filed. *Id.* at 868. Citing the forum defendant rule, which prohibits removal of a case when at least one defendant is a citizen of the state in which the action is filed, *see* 28 U.S.C. § 1441(b), the plaintiffs then moved to remand the action to state court. *Spencer*, 393 F.3d at 868. We affirmed the district court's refusal to remand the case, holding that "[c]hallenges to removal jurisdiction require an inquiry into the circumstances at the time

the notice of removal is filed." *Id.* at 871. If removal is proper at the time the notice is filed, "subsequent events, at least those that do not destroy original subject-matter jurisdiction, do not require remand." *Id.*

Mt. Hawley argues that the defendant unanimity rule in this case is equivalent to the forum defendant rule in *Spencer* because both are non-jurisdictional defects that apply only to defendants "properly joined and serviced in the action." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988). As such, Mt. Hawley contends, the principles enunciated in *Spencer* and *Reddam* apply: the validity of removal is determined by the facts as they existed at the time of the removal, and subsequent events do not require remand. *See Reddam*, 457 F.3d at 1059; *Spencer*, 393 F.3d at 871. In light of this principle, Mt. Hawley claims there was no unanimity defect at the time this case was removed because neither Lebanon Hardboard nor Tritalent had been properly joined and served. *See Emrich*, 846 F.2d at 1193 n.1. According to Mt. Hawley, § 1448 does not help the defendants because it gives them only the right to bring a motion for remand for a defect that existed at the time of the removal, a situation not present here.

Because in Mt. Hawley's view there was no defect at the time of removal, Mt. Hawley concludes that the district court's remand order "plainly indicates that the later occurring events were the basis for the decision." *Reddam*, 457 F.3d at 1059. Because "[t]hat cannot be a basis for a § 1447(c) remand order," *id.*, the district court erred in remanding based on § 1447(c), and as in *Reddam*, Mt. Hawley contends, we can review and reverse this erroneous holding.

We disagree with this reasoning. Mt. Hawley's analysis is based on three propositions: (1) defendant non-unanimity is a defect under § 1447(c) only at the time of removal; (2) § 1448 does not authorize a defendant who was served after removal to move to remand the case within 30 days after removal for

lack of unanimity; and (3) we can review a district court's remand order when it is plainly wrong. Under *Powerex*, we must ask whether these propositions are so clear that the district court's characterization of its remand as being based on a non-jurisdictional defect was not even colorable. *See* 551 U.S. at 234.

However, rather than enunciating clearly established law, Mt. Hawley's first two propositions raise unsettled questions that cannot be the basis for holding that the district court's remand order failed the minimum standard of being "colorable." *Spencer* did not resolve the issue raised in Mt. Hawley's first proposition, whether a defendant unanimity issue that arises after removal can be a defect for purposes of § 1447(c). Neither the unanimity rule nor the authority of a district court to remand based on post-removal events was before us in *Spencer*, because in that case we upheld a district court's denial of a remand motion based on the forum defendant rule. 393 F.3d at 869. Mt. Hawley has not cited, and we have not found, any case directly on point. Moreover, as explained above, *Powerex* overruled the doctrine that § 1447(c) and (d) do not apply when a remand is based on events occurring after removal. *Powerex*, 551 U.S. at 230; *see Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 636 (6th Cir. 2008) ("Accordingly, we recognize that our Sixth Circuit decisions are overruled to the extent they held that a remand for lack of subject matter jurisdiction pursuant to § 1447(c) was reviewable if it was premised on a post-removal [event]."); *Price v. J & H Marsh & McLennan, Inc.*, 493 F.3d 55, 60-61 (2d Cir. 2007) (holding that *Powerex* overruled *Reddam* and other cases recognizing the post-removal-event doctrine). Although *Powerex*'s rejection of the post-removal-event doctrine arose in the context of a remand order based on lack of subject matter jurisdiction, the question whether that portion of *Powerex*'s ruling also extends to remand orders based on non-jurisdictional defects "is certainly debatable." 551 U.S. at 233-34. Accordingly, *Powerex*

mandates that § 1447(d) deprives us of appellate jurisdiction to review the remand order.

Nor did *Spencer* address Mt. Hawley's second proposition, whether § 1448 authorizes a defendant who was served after removal to remand the case within 30 days for lack of unanimity when that defect did not exist at the time of the removal. We have not addressed this issue, and neither has the Supreme Court.

Mt. Hawley's third proposition, that under *Reddam* we can review a remand order when the district court's reasoning indicates it made an error of law, is plainly contrary to *Powerex*. As explained above, if the district court purports to remand on a ground enumerated in § 1447(c), we can look behind the district court's stated basis for its remand only if its characterization is not "colorable." *Powerex*, 551 U.S. at 234. Where a remand order "is based on one of the grounds enumerated in 28 U.S.C. § 1447(c)," and that ground is colorable, then "review is unavailable no matter how plain the legal error in ordering the remand." *Kircher*, 547 U.S. at 642 (brackets and internal quotation marks omitted). To the extent *Reddam* and other cases hold otherwise, they are irreconcilable with the holding and reasoning of *Powerex* and are thus superseded. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

**[11]** Here the district court based its remand order on a lack of defendant unanimity, which we have held to be a defect for purposes of § 1447(c). *See Aguon-Schulte*, 469 F.3d at 1240. Mt. Hawley's arguments, based on open legal questions and a superseded rule of law, have not established that the district court's remand on this ground failed to meet *Powerex*'s "colorability" standard. *See* 551 U.S. at 234. Accordingly, we lack jurisdiction to review Mt. Hawley's

appeal. *See* 28 U.S.C. § 1447(d).**[4]**

**DISMISSED.**

---

**[4]**Because we decide on this ground, we do not reach appellees' argument that we lack subject matter jurisdiction because the parties are not completely diverse. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (holding that there is "no mandatory 'sequencing of jurisdictional issues,'" and we have "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 585 (1999))).